Sheldon Lamar HUNT, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–515C.

United States Court of Federal Claims.

July 10, 2002.

Staff Sergeant Sheldon Lamar Hunt, USAR, plaintiff, appearing pro se.

Michael Kiely, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for the United States. With him on briefs are Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director, and LTC Tara Osborn and CPT David E. Mendelson, Military Personnel Branch, Litigation Division, U.S. Army, of counsel.

## OPINION

BRUGGINK, Judge.

Pending in this military pay case are defendant's motion to dismiss and plaintiff Staff Sergeant Sheldon Lamar Hunt's cross-motion for judgment on the administrative record and motion to stay the proceedings. Defendant's motion was filed pursuant to Rule 12(b)(4)[1] of the Rules of the U.S. Court of Federal Claims (RCFC). By order filed June 6, 2002, the motion to dismiss was treated as a motion for summary judgment pursuant to RCFC 56. Following that order, the plaintiff filed a motion to stay the proceedings pending the presentation of additional evidence. Oral argument is deemed unnecessary. The issue presented is whether this court can provide relief for a member

of the armed services who was allegedly coerced into resigning from Officer Candidate School (OCS). For the reasons set out below, the plaintiff's motions are denied, and the defendant's motion is granted.

## BACKGROUND

Staff Sergeant Hunt, a member of the Unites States Army Reserves, enrolled in OCS at Ft. Benning, GA, on June 18, 1995. The OCS course lasted for fourteen weeks and graduation was scheduled for September 22, 1995. SSG Hunt attended from June 18, 1995 until his resignation from OCS on September 12, 1995.

On August 31, 1995, the Teach–Assess Counsel Officer of SSG Hunt's platoon, Captain (CPT) Charles Ogle, recommended to CPT David Cannon that SSG Hunt be "recycled" into the following OCS class. As a "recycle," SSG Hunt would be given credit for all graduation requirements that he had successfully completed up to that point, enrolled in the next OCS class, and given additional opportunities to satisfy the requirements to graduate and earn a commission. CPT Cannon agreed with CPT Ogle's recommendation and notified Lieutenant Colonel (LTC) Scott Armbrister. On September 8, 1995, before any official action was taken, SSG Hunt spoke to his superiors and was verbally informed of the recycle recommendation. On September 11, 1995, SSG Hunt submitted a signed Request for Disposition Prior to Graduation signifying his voluntary resignation from OCS. In his resignation, SSG Hunt checked "lack of commitment" as the reason for his decision. The resignation also stated, "I make this statement freely and without coercion." On September 12, 1995, LTC Armbrister approved SSG Hunt's resignation and ordered his release from OCS. SSG Hunt was thus not "recycled" back into OCS, rather, he returned to the Reserves without having been commissioned as an officer.

SSG Hunt then commenced a series of complaints and petitions to various superior

---

1. The Rules of the U.S. Court of Federal Claims were revised as of May 1, 2002. A motion to dismiss for failure to state a claim upon which

relief can be granted, which was pursuant to RCFC 12(b)(4) before the revision, is now made pursuant to RCFC 12(b)(6).

officers regarding his resignation from OCS. After these complaints were rejected, SSG Hunt filed suit in federal district court in January, 1997. *Hunt v. Armbrister*, Civ. No. 97–4(DRD) (D. Ct. N.J., April 29, 1997). SSG Hunt sued LTC Armbrister, CPT Cannon, and Sergeant Calvin Glenn for "failure to provide equal opportunity of higher employment/promotion." SSG Hunt claimed that his superiors violated Army Regulation 351–14, which requires that the OCS student be notified in writing of a superior officer's decision to recommend recycling, that the reasons for that action be stated in the notification, and that the student be allowed to submit a rebuttal within 48 hours of notification. SSG Hunt also claimed that he had been coerced by his superiors into signing the Request for Disposition Prior to Graduation.

The plaintiff's case was dismissed by the district court. The court explicitly rejected his claims based on Title VII of the 1964 Civil Rights Act, the Due Process Clause, and coercion. In dismissing SSG Hunt's Due Process claim, the district court noted that his superiors could not have deprived him of a liberty interest. Regardless of whether his resignation was voluntary or coerced, he had not been deprived of the right to pursue his graduation from OCS. On the contrary, SSG Hunt was explicitly informed in a letter from the Army Chief of Staff dated September 1996, that his "decision to leave OCS before completing the requirements for commissioning does not prevent [him] from reapplying to attend the OCS program and earn a commission." In denying the coercion claim, the district court noted that SSG Hunt had a viable option other than resigning from OCS: he could have accepted the recommendation of his superiors and been "recycled" into the next class.

SSG Hunt then petitioned the Army Board for Correction of Military Records (ABCMR) numerous times between July 1999 and February 2001 to have his records corrected to show that he had graduated from OCS and had been commissioned as an officer in the U.S. Army. These petitions were denied. The failure of the ABCMR to decide in his

favor regarding the alleged violation of Army Regulation 351–14, the alleged coercion, and his subsequent entitlement to compensation make up the basis of SSG Hunt's present claim. He is presently seeking: 1) back pay for six years active duty in the grade of captain and accompanying benefits; 2) promotion to captain; 3) six years active duty credit; 4) expungement of all negative evaluations while at OCS; and 5) travel pay from Newark, NJ, to Baton Rouge, LA, for six years.

In addition to the allegations in the complaint, the factual background in this opinion is drawn from the appendix to the government's motion to dismiss. The appendix includes the unpublished opinion of the District Court for the District of New Jersey in *Hunt v. Armbrister*, as well as copies of documents produced by the ABCMR regarding SSG Hunt's petitions. RCFC 12(b)(6) states that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56 . . . ." Therefore, in an Order dated June 6, 2002, the court notified both parties that the government's motion to dismiss would be reviewed as a motion for summary judgment pursuant to RCFC 56. *See* RCFC 12(b)(6); *Pax Christi Mem'l Gardens, Inc. v. United States*, 52 Fed.Cl. 318, 323 (2002); *Guardsman Elevator Co. v. United States*, 50 Fed.Cl. 577, 581 (2001) (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed.Cir.2000)).

Plaintiff agreed to proceed in this manner. Indeed, his cross-motion and subsequent filings demonstrate that he treated the government's motion to dismiss as a motion for summary judgment from the outset. Furthermore, the order gave SSG Hunt four weeks in which to file any additional materials that may have been made relevant by the court's action. He has submitted no additional material. Instead, SSG Hunt filed a motion to stay the proceedings until August 14, 2002. His motion was filed pursuant to the Soldiers and Sailors Civil Relief Act. *See* 50 App. U.S.C. §§ 501–594 (1991).[2] SSG

2. SSG Hunt is currently on active duty in Kuwait as part of Operation Enduring Freedom and is

Hunt sought time to present additional evidence regarding the allegedly involuntary nature of his resignation.

We decline to suspend proceedings. SSG Hunt elected to bring this proceeding and his conduct of it has not been hampered by his military service. *See* 50 App. U.S.C. § 521. The defenses put forward by the suit are based on facts fully available to plaintiff. For the reasons set out below, the court finds that SSG Hunt has failed to state a claim for which relief can be granted.[3]

## DISCUSSION

SSG Hunt claims that the basic military pay statute for personnel on active duty, 37 U.S.C. § 204 (1994), and the Tucker Act, 28 U.S.C. § 1491 (1994), entitle him to six years back pay. He claims that he is also entitled to retroactive promotion to captain and changes in his records as ancillary relief.

The government asserts that SSG Hunt's claim should be dismissed, regardless of whether Army Regulation 351–14 was violated or whether plaintiff was coerced into resigning from OCS. The government sets out alternative grounds for such a ruling: res judicata based on the district court's ruling and failure to identify a money-mandating statute.

Although the present claim and the district court action involve many of the same facts, we decline to dismiss SSG Hunt's claim on grounds of res judicata. In *Hunt v. Armbrister,* SSG Hunt accused three individuals of unfair employment practices, while the present claim alleges that the federal government deprived the plaintiff of a statutory right to compensation. Furthermore, the present complaint alleges that the actions of the ABCMR, which took place after the district court ruled, played a significant role in the deprivation of pay. Therefore, SSG Hunt's present claim is not barred by res judicata.

The more relevant question is whether SSG Hunt has identified a money-mandating

statute that can provide the relief he seeks. We conclude that he has not.

SSG Hunt was a member of the U.S. Army Reserve, but he asserts that once he enrolled in OCS, he was on active duty. And because he had been in OCS for more than 30 days at the time of his resignation, he claims to have been entitled to military pay pursuant to 37 U.S.C. § 204, which governs pay for members of the armed services on active duty.

The distinction between active duty and reserve status is significant. Payment of reservists is governed by 37 U.S.C. § 206. Section 206 only mandates payment to reservists and members of the National Guard for *duties performed.* 37 U.S.C. § 206; *Reeves v. United States,* 49 Fed.Cl. 560, 566 (2001) (citing *Ayala v. United States,* 16 Cl. Ct. 1, 4 (1988)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999). Because SSG Hunt never performed any duties as a Captain, he cannot be entitled to back pay at that rank under section 206. In fact, SSG Hunt is not claiming that he performed any duties for which he was not adequately compensated. Instead, he contends that the government's allegedly wrongful conduct (coercing his resignation) deprived him of the chance to perform duties at a higher rank that *would have* entitled him to higher pay. Because a reservist has no lawful pay claim against the United States for unperformed duty, *Palmer,* 168 F.3d at 1314, SSG Hunt's claim for back pay (at any rank) cannot be based on section 206.

SSG Hunt can only claim back pay for unperformed duties pursuant to section 204, which mandates pay for personnel on active duty. 37 U.S.C. § 204. Unlike section 206, the legal entitlement to pay in section 204 is not extinguished in cases of improper discharge. *Reeves,* 49 Fed.Cl. at 566. Section 204 is thus a vehicle for personnel claiming back pay for duties that were not performed due to wrongful removal from active duty. *Id.; Palmer* 168 F.3d at 1314. Furthermore, section 204 also applies to former reservists

---

scheduled to return to the United States August 2, 2002.

**3.** We note, in any event, that because the district court found that SSG Hunt failed to overcome

the presumption that his resignation was voluntary, he is collaterally estopped from asserting that his resignation was involuntary.

who were wrongfully removed from active duty. *Murphy v. United States*, 993 F.2d 871, 872 (Fed.Cir.1993).[4]

SSG Hunt's claim, however, is not one for which relief can be granted even if he was on active duty within the meaning of section 204 at the time of his resignation. SSG Hunt claims to be entitled to six years back pay at the rank of captain, despite the fact that he was never appointed to that rank (he never graduated OCS and therefore was never commissioned as an officer). The court cannot retroactively appoint him to the rank of captain, nor can it retroactively compensate him as if he had been so appointed. *United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Reeves*, 49 Fed. Cl. at 568. The United States Supreme Court emphatically established this precedent in *Testan:*

> There is no claim here that either respondent has been denied the benefit to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not appointed. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it.

*Testan*, 424 U.S. at 402, 96 S.Ct. 948. The distinction between active duty and reserve status is thus irrelevant with regard to SSG Hunt's claim to be entitled to an appointment to captain and to back pay at that rank. Because SSG Hunt was never appointed captain, neither that rank nor its benefits can be bestowed upon him, regardless of the government's allegedly wrongful conduct.

In documents filed after his complaint, SSG Hunt shifts his argument somewhat. In his Reply to Defendant's Opposition (filed March 28, 2002), SSG Hunt seeks to be placed "in appropriate military position had

the error or injustice had not occurred ... back pay ... and allowances for six years in the grade at which plaintiff was illegally recycled." This request is not inconsistent with the holding in *Testan.* If SSG Hunt was on active duty at the time of his resignation from OCS, and his resignation was coerced, could he be entitled to restoration to the rank he resigned from and the corresponding benefits?[5] The court finds that, in this case, the answer must be "no" for two reasons: a) the factual basis for SSG Hunt's present claim is precluded by collateral estoppel; and b) the only remedy that the court could possibly offer was already available, and SSG Hunt elected not to pursue it.

 While the district court decision does not bar the present claim through operation of *res judicata*, the doctrine of collateral estoppel does preclude SSG Hunt from contesting the district court's factual findings. *Paalan v. United States*, 51 Fed.Cl. 738, 743 (2002) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983)). The Federal Circuit has established four essential requirements for applying collateral estoppel or issue preclusion:

> (1) the issues to be concluded are identical to those involved in the prior action; (2) those issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the prior action.

*Mother's Restaurant*, 723 F.2d at 1569. The issue of whether SSG Hunt's resignation was voluntary was present and fully litigated in *Hunt v. Armbrister*, and it was necessary to that judgment. Although SSG Hunt repre-

---

4. SSG Hunt's claim for pay pursuant to section 204 raises the question of whether just under three months of OCS training was sufficient to change SSG Hunt's status from reservist to active duty as conceived by section 204. This question does not have to be addressed, however, because SSG Hunt's claim is not one for which relief can be granted even if he was on active duty at the time of his resignation.

5. Such a remedy would raise the question of justiciability. Courts have been reluctant to review personnel decisions of the armed forces. *Murphy*, 993 F.2d at 872 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953)) ("Judges are not given the task of running the Army."); *Rice v. United States*, 31 Fed.Cl. 156, 165 (1994) (quoting the same passage). Given the holding here, however, the question of justiciability is moot.

sented himself in that action, the fact that a party appears pro se does not preclude collateral estoppel. *Paalan,* 51 Fed.Cl. 738, 743 (citing *Moss v. Dep't of Air Force,* 82 M.S.P.R. 309, 314 (1999)). The district court found that SSG Hunt had failed to overcome the presumption that his resignation from OCS was voluntary. Therefore, we are bound to assume that SSG Hunt's resignation was voluntary.

 The fact that SSG Hunt's resignation was voluntary dictates that his claim must fail. His voluntary resignation, not the government's coercion, caused SSG Hunt to leave OCS before graduating; thus, the government cannot be liable for any resulting loss of pay. SSG Hunt has no right under section 204, or any other military pay statute, to be compensated at the level from which he resigned (OCS student). Furthermore, the refusal of the ABCMR to change his records could not have deprived him of pay since he voluntarily resigned. Simply put, without the factual possibility that he was coerced into resigning from OCS, SSG Hunt has no basis upon which to file a claim for back pay.

Even if SSG Hunt was not collaterally estopped from presenting evidence that his resignation from OCS was coerced, his claim would still fail because the facts show that his resignation, voluntary or coerced, did not deprive him of pay. Under *Testan,* the most SSG Hunt could possibly be entitled to is restoration to the position that he held before being discharged (a student at OCS), along with corresponding back pay. But SSG Hunt has never explicitly petitioned this court to reinstate him at OCS. Such a request would be curious under the circumstances because the event that precipitated this entire dispute was the recycling recommendation by SSG Hunt's superiors, which would have left him in OCS training. Even after his resignation, the Army explicitly told SSG Hunt that he could reapply to OCS. The only relief that the court could possibly provide has thus been available since at least September 1996. Regardless of any alleged coercion or misinformation at the time of his resignation, SSG Hunt had the opportunity to reapply to OCS and chose not to do so. The government cannot be compelled to compensate SSG Hunt after he freely and knowingly refused to reapply to OCS during the roughly six years between his resignation and filing of this claim.

In addition to his petition for back pay, SSG Hunt also seeks consideration for promotion to captain, six years active duty credit, and expungement of all negative evaluations from OCS. The court has the power to grant equitable relief ancillary to a monetary award. However, any equitable relief must be collateral to, or as an incident of, a judgment for money damages. *Reeves,* 49 Fed. Cl. at 569; *Palmer,* 168 F.3d at 1314 (citing *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997)). Because SSG Hunt has no valid claim for potential monetary damages, there can be no equitable relief.

## CONCLUSION

Plaintiff fails to state a claim for which relief can be granted. Accordingly, the government's motion for summary judgment pursuant to RCFC 56 is granted. SSG Hunt's cross-motion for judgment is denied. His motion to stay the proceedings is also denied. Accordingly, the clerk shall enter judgment dismissing the complaint. No costs.